UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-14473-CIV-MAYNARD

SANDRA RAPAK

    Plaintiff,

v.

**KILOLO KIJAKAZI,** Acting Commissioner
of the Social Security Administration

    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 24)

**THIS CAUSE** is before me on Plaintiff's Motion for Summary Judgment (DE 24), Defendant's Motion for Summary Judgment/Response (DE 26), and Plaintiff's Reply (DE 27). Upon consideration of the briefing and the record, and having held a hearing thereon, Plaintiff's Motion, DE 24, is **DENIED.**

## BACKGROUND

This case involves a determination of Plaintiff Sandra Rapak's ("Plaintiff's") applications for disability insurance benefits and supplemental security income filed on December 17, 2019. R. 382; R. 384.[1]  Plaintiff alleged disability beginning on February 15, 2018, due to Degenerative Disc Disease – Disc Herniation Back, Hypertension, Peripheral Neuropathy Hands, Asthma, Gout R Foot, Unknown Legs, Shoulders Problem, Unknown Arthritis Feet, Knees, Hips, Hands. R.159-60, 164-65.

---

[1] A 773-page certified transcript (DE 21) contains the entire administrative record.  The transcript index (DE 21 at 2-6) identifies each document or set of documents by exhibit number and description.  I will cite to the transcript as "R." followed by the page number(s) listed on the index and located at the bottom right-hand corner of each page.

Plaintiff was 57 on her alleged disability onset date. R. 382, 384. She has a GED[2] and past relevant work as a trailer assembler, fast-food manager, and fast-food worker. R.15, 22, 96. Plaintiff's application was denied initially and upon reconsideration. R.10. At Plaintiff's request, Administrative Law Judge ("ALJ") Elana Hollo held a hearing on February 9, 2021. R. 116-158. Due to technical difficulties, the hearing was continued on February 25, 2022. R. 85-115. Plaintiff was represented by Rebecca Davis, a non-attorney representative. R. 85, 110, 116, . The ALJ issued an unfavorable decision on April 21, 2021, finding Plaintiff not disabled from February 15, 2018, to April 21, 2021. R. 10-23.

On October 12, 2021, the Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-3. Plaintiff has exhausted her administrative remedies and now seeks judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## **STANDARD OF REVIEW**

To qualify for Social Security benefits, a claimant must show that she is disabled. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or

---

[2] A GED, or Graduate Equivalency Degree, is acquired through a series of tests indicating a high school level of education. https://ged.com/blog/what-is-a-ged/ (last visited October 21, 2022).

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court. A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ. *Heckler v. Day*, 467 U.S. 104, 106–07 (1984). An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013). If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a). After completing the foregoing administrative process, a claimant may seek review in federal court. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Under governing regulations, the Social Security Administration conducts its "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, social security administrative hearings "are inquisitorial rather than adversarial." *Washington*, 906 F.3d at 1364 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

On review in federal court, the scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the court must defer to the ALJ's decision even if

the evidence preponderates against it. *Crawford*, 363 F.3d at 1158-59. However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … '[w]e retain an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Remand is appropriate for further factual development where the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

A reviewing court is also required to review the ALJ's decision to determine if the correct legal standards were applied. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## THE ALJ'S DECISION

The ALJ in this case proceeded through the five-step analysis as follows: At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. R. 13. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the knee, asthma, and osteoarthritis of the bilateral hands.[3] *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments

---

[3] The ALJ also noted that the record referred to hypertension; however, the ALJ found it to be nonsevere. R. 14. Additionally, the ALJ acknowledged Plaintiff's mental health allegations but also found them nonsevere. *Id.*

that met or medically equaled the severity of an agency-listed impairment in the Listings. R. 15-16. As a predicate to step four, the ALJ found that Plaintiff had the RFC to perform work at the light level with the following additional limitations: frequently climb ramps or stairs, and occasionally climb ladders, ropes, or scaffolds; frequently stoop, crouch, kneel, and crawl; and frequently handle with the bilateral upper extremities. R. 16. The ALJ further determined that Plaintiff should avoid concentrated exposure to irritants such as fumes, odors, dusts, gases, and chemicals, as well as poorly ventilated areas. *Id.* At step four, based on testimony from a vocational expert ("VE"), the ALJ found that Plaintiff could perform her past relevant work as a fast-food services manager. R. 22-23. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act from February 15, 2018 through the date of the decision. R.22-23.

## DISCUSSION

Plaintiff makes three arguments in her motion for remand:

(1) The ALJ's step four finding that Plaintiff can perform her past relevant work "as generally performed" is contrary to law and not supported by the record because Plaintiff's past relevant work was a composite job.

(2) The ALJ erred by failing to address the Plaintiff's post-hearing memorandum, vocational report, and objections raised therein.

(3) The appointment of Andrew Saul as Commissioner of the Social Security Administration, removable only for cause, violates separation of powers, and the decision by the ALJ was therefore constitutionally defective.

**A.  Whether Plaintiff's Past Relevant Work Constitutes a Composite Job**

Plaintiff has the burden to show that her previous work was a composite job. *Bitowf v. Saul*, No. CV 1:19-00845-N, 2021 WL 1183794, at *11 (S.D. Ala. Mar. 29, 2021) (citing *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018). "A composite job is one that has 'significant elements of two or more occupations and, as such, [has] no counterpart in the

[Dictionary of Occupational Titles ("DOT")].'" *Smith*, 743 F. App'x at 954 (quoting SSR 82-61 at *2). "Past relevant work may qualify as a composite job 'if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant.'" *Id.* (citing Program Operations Manual System ("POMS") DI 25005.020).

Generally, "[a] claimant has to show an inability to return to her previous work (i.e., occupation), and not simply to her specific prior job." *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). If past relevant work constitutes a composite job, however, "the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform h[er] previous work as actually performed." *Smith*, 743 F. App'x at 954 (citations omitted); SSR 82-61, 1982 WL 31387, at *2 ("Such situations [involving composite jobs] will be evaluated according to the particular facts of each individual case.").

In the instant case, Plaintiff failed to carry her burden to show that her past relevant work was a composite job. Plaintiff testified at her hearing that she worked two jobs at Burger King—kitchen prep and kitchen lead. R.99-101. Plaintiff stated that she started in the position of kitchen prep. R.99. Plaintiff then worked as kitchen lead for approximately four years. R.100-01. Plaintiff testified that, as kitchen lead, she "made sure everything was done in the kitchen." R.99. Thus, the kitchen lead job required her to start the prep, clean friers, rearrange stock, train people, cashier, and take orders from the window. R. 105. Plaintiff testified that her job as kitchen lead included "being [a] prep worker[.]" R.109; 99. She further testified that she did anything asked of her, including gardening outside. R.105-06. In response to the ALJ's inquiry as to the heaviest weight Plaintiff had to lift and carry on a regular basis as kitchen lead, Plaintiff responded that it was a box of tomatoes or Whoppers weighing 35 to 50 pounds. R.106. Plaintiff also described the kitchen lead position in her work history report by stating that she "ran [the] kitchen, made food[,]

stood all day, cleaned fryers, [did] prep., [and handled the] register." R.470. In addition, she trained people in the kitchen. R.470. Furthermore, she supervised 2 to 3 people and spent 5 hours per day supervising. R.470. She did not hire and fire. R.470.

Under agency regulations, the ALJ may use "'the services of vocational experts or vocational specialists' … in making [a] determination [about a Plaintiff performing past relevant work]." *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005) (citing 20 C.F.R. § 404.1560(b)(2). Indeed, "the ALJ may rely on a VE's testimony as this 'may be helpful in supplementing or evaluating the accuracy of the claimant's description of [her] past work.'" *Dukes v. Saul*, No. 8:18-CV-2553-T-SPF, 2020 WL 755393, at *4 (M.D. Fla. Feb. 14, 2020) (quoting 20 C.F.R. § 404.1560(b)(2)). *See also* 20 C.F.R. § 416.960(b)(2) (same); *Bryant v. Comm'r*, 451 F. App'x 838, 839 (11th Cir. 2012) ("The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise."). Furthermore, a VE's testimony that a job is not a composite job constitutes substantial evidence unless there is an apparent conflict with the DOT or a reasonable person would not accept the VE's testimony as adequate support for a conclusion. *See Leach v. Saul*, No. 18-23950-CIV, 2019 WL 3858824, at *7 (S.D. Fla. Aug. 16, 2019) (finding that VE's "testimony constitute[d] substantial evidence that the plaintiff's office manager position was not a composite job"); *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (holding that "the ALJ has an affirmative obligation to identify any 'apparent' conflict [with the DOT] and to resolve it"); *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x, 838, 838-39 (11th Cir. 2012) ("Substantial evidence is 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Here, the VE specifically testified that Plaintiff's past relevant work at Burger King was not a composite job. Rather, the VE testified that Plaintiff's kitchen prep position corresponded to the DOT position of fast-food worker, number 311.472-010.[4] R.102. The VE further testified that Plaintiff's kitchen lead position corresponded to the DOT position of fast-food manager, number 185.137-010.[5] R.102 *Id.* In addressing the kitchen lead job, the VE noted that the DOT "doesn't distinguish between supervisor or manager." R.102-03. Therefore, the VE classified Plaintiff's job as kitchen lead as a fast-food manager job. R.102-03. The VE further testified that both jobs were medium as actually performed and light, according to DOT, as generally performed. *Id.* The VE additionally testified that Plaintiff could perform the fast-food manager job as

---

[4] The DOT describes the fast-food worker position responsibilities as follows:

> Serves customer of fast food restaurant: Requests customer order and depresses keys of multicounting machine to simultaneously record order and compute bill. Selects requested food items from serving or storage areas and assembles items on serving tray or in takeout bag. Notifies kitchen personnel of shortages or special orders. Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or desserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker. Presses lids onto beverages and places beverages on serving tray or in takeout container. Receives payment. May cook or apportion french fries or perform other minor duties to prepare food, serve customers, or maintain orderly eating or serving areas.

*See* https://occupationalinfo.org/31/311472010.html (last visited Nov. 18, 2022).

[5] The DOT describes the fast-food manager position responsibilities as follows:

> Manages franchised or independent fast food or wholesale prepared food establishment: Directs, coordinates, and participates in preparation of, and cooking, wrapping or packing types of food served or prepared by establishment, collecting of monies from in-house or take-out customers, or assembling food orders for wholesale customers. Coordinates activities of workers engaged in keeping business records, collecting and paying accounts, ordering or purchasing supplies, and delivery of foodstuffs to wholesale or retail customers. Interviews, hires, and trains personnel. May contact prospective wholesale customers, such as mobile food vendors, vending machine operators, bar and tavern owners, and institutional personnel, to promote sale of prepared foods, such as doughnuts, sandwiches, and specialty food items. May establish delivery routes and schedules for supplying wholesale customers. Workers may be known according to type or name of franchised establishment or type of prepared foodstuff retailed or wholesaled.

*See* https://occupationalinfo.org/18/185137010.html (last visited Nov. 18, 2022).

generally performed but not as actually performed and could not perform the fast-food worker job because it required constant handling. R.103-05.

Plaintiff's representative at the hearing challenged the VE about whether Plaintiff's jobs at Burger King should be considered composite jobs because there were duties outside of how the DOT describes them. R.107-09. In response, the VE testified that the jobs were not composite jobs. R.107-09. As to the fast-food manager job specifically, the VE explained that a working fast-food manager was not uncommon and that is how Plaintiff performed it, which is why her job "included medium lifting and carrying rather than light as it's described in the DOT." R.107. The VE had personal experience analyzing these jobs at Burger King and other fast-food restaurants. R.107. The VE testified that he had observed the manager job performed at both the medium and light levels; however, the DOT classified the job as light because that is how it is typically performed in the national economy. R.107-09. In this context, "a reasonable person would accept the VE's testimony as being adequate to support [his] conclusion." *Bryant*, 451 F. App'x at 839–40. Thus, the testimony constitutes substantial evidence.

For her part, Plaintiff contends her past work as a fast-food manager was not solely a manager job but was a composite job consisting of the duties of both fast-food worker and fast-food manager. DE 24-1 at 6. Plaintiff further contends that she cannot return to her past relevant work as a fast-food manager because her duties required a medium level of exertion, and she is limited to a light level. *Id.* Defendant counters that, based upon the VE's testimony, a manager is responsible for the entire business and occasionally performs duties outside the description of the job's typical duties but that does not make the job a composite job. DE 26 at 8. Defendant further argues that, as the VE explained, the fast-food manager job is generally performed in the national economy at the light level even though Plaintiff actually performed it at the medium level. *Id.*

Thus, Defendant contends that Plaintiff failed to carry her burden to show that she had a composite job—a job with combined duties such that there is no counterpart in the DOT. *Id.* at 7-8. I agree.

In *Smith*, the Eleventh Circuit articulated what a Plaintiff must show to prove a job is a composite job. There, the plaintiff challenged the VE's classification of his position as a telephone clerk because, "unlike other telephone clerks, [he] was required to hang rent notices … on the doors of apartments." 743 F. App'x at 952. "[T]here was no description in the DOT for a position that involved hanging rent notices." *Id.* Plaintiff argued that his "position qualifie[d] as a composite job because … hang[ing] rent notices … [was] a duty beyond the usual responsibilities of a telephone clerk." *Id.* at 954. The *Smith* Court found that plaintiff failed to show that his job as a telephone clerk was a composite job because "he introduced no evidence about how much time he spent hanging rent notices or otherwise establishing that this duty was a significant element of the job." *Id.* Therefore, the Court determined that the ALJ did not err in concluding that plaintiff's past relevant work was not a composite job. *Id.*

Similarly, here, Plaintiff has not established <u>outside duties</u> that constitute a significant part of her job as fast-food manager in order to qualify that job as a composite job. Indeed, both the DOT and the VE recognized that, far from being an outside duty, preparing food is a common part of a fast-food manager's job. *See* DOT number 185.137-010 (stating that a fast-food manager ("[d]irects, coordinates, and <u>participates in preparation of, and cooking, wrapping or packing types of food served or prepared by establishment</u>."); R.107 (VE explaining that a working fast-food manager is not uncommon). Other than mentioning gardening outside, Plaintiff provides no evidence that she spent any time performing duties outside the scope of the DOT's description of the fast-food manager job. She also provides no evidence about the time she spent performing duties outside the scope of the DOT's description of the fast-food manager job. Thus, Plaintiff

fails to show that her manager job at Burger King was a composite job lacking a counterpart in the DOT. Plaintiff's argument that the ALJ erred in not finding that her past relevant work as a kitchen lead at Burger King was a composite job lacks merit.

### B. Whether the ALJ Erred by not Addressing Objections in Plaintiff's Post-Hearing Memorandum and Vocational Report

At the hearing held on February 25, 2021, Plaintiff's representative requested one week to provide a post-hearing memorandum regarding the vocational testimony, which the ALJ granted. R.114. Ultimately, Plaintiff submitted the memorandum untimely. DE 24-1 at 11. The ALJ issued her opinion and did not address Plaintiff's post-hearing memorandum. Plaintiff argues that the ALJ was required to address her post-hearing objections and did not do so, thus warranting remand. DE 24-1 at 10-11.

An ALJ's failure to address post-hearing objections to VE testimony is not reversible where Plaintiff lacks evidentiary support that the ALJ received the objections. *See Pickett v. Berryhill*, No. 5:17-CV-01413-LSC, 2019 WL 968901, at *5-6 (N.D. Ala. Feb. 28, 2019) (noting that the Commissioner "point[ed] out that … Plaintiff [did] not provide[ ] evidentiary support that [post-hearing] objections [to the VE's testimony] were ever actually received by the ALJ" in a case where the ALJ failed to rule upon such objections). Furthermore, an ALJ does not err by failing to consider untimely post-hearing objections and rebuttal evidence. *See Gentry v. Berryhill*, No. 4:18CV3044, 2018 WL 6045257, at *9 (D. Neb. Nov. 19, 2018) ("The ALJ did not err in failing to discuss [plaintiff]'s untimely post-hearing evidentiary objections and rebuttal evidence."); *Goodman v. Saul*, No. 6:18-CV-06027, 2019 WL 4145359, at *3 (W.D. Ark. Aug. 30, 2019) ("ALJ was not required to further analyze Plaintiff's untimely submitted post-hearing memorandum and the attached evidence."); *Brownell v. Berryhill*, No. CV 17-11462-FDS, 2018 WL 615662, at *2

(D. Mass. Jan. 29, 2018) (denying plaintiff's motion to admit his VE's supplemental affidavit into the record where plaintiff sought to submit the affidavit more than two months after the ALJ's deadline for submission of a post-hearing brief).

Here, Plaintiff's argument for remand on the basis of her late-submitted post-hearing brief fails. First, the record contains no evidence that the ALJ received Plaintiff's post-hearing brief. Plaintiff's brief was dated April 7, 2021. DE 24-1 at 11; R.539-45; 568-73. The ALJ's opinion, dated April 21, 2021, lists a letter, dated February 26, 2021, as the latest-dated exhibit to the opinion. R. 29. Plaintiff acknowledges that her post-hearing brief was "unexhibited," which means that it was not to be found in the record, until Plaintiff resubmitted it as an attachment to her appeals brief. DE 24-1 at 11. Thus, there is no evidentiary support for the contention that the ALJ received Plaintiff's post-hearing brief before issuing her opinion. Second, the post-hearing brief was untimely submitted. At the hearing, on February 25, 2021, the ALJ stated that she would leave the record open for seven days to receive a post-hearing brief regarding the vocational testimony. R.114. On February 26, 2021, Plaintiff's representative wrote to the ALJ stating that Plaintiff required two weeks to submit her rebuttal evidence. R.538. Plaintiff acknowledges that the ALJ agreed to hold the record open, until March 12, 2021, for the post-hearing brief; however, Plaintiff did not submit the brief until April 7, 2021. DE 24-1 at 11. As Defendant correctly argues, the ALJ cannot address that which is not before her. DE 26 at 9. Plaintiff fails to respond to Defendant on the issue of her late-submitted brief, which lacks evidence in the record of being received by the ALJ. DE 27. Therefore, I find that Plaintiff's post-hearing brief was not submitted timely, and the record does not reflect that the ALJ received it before issuing her decision. Accordingly, Plaintiff fails to demonstrate that remand is warranted on grounds that the ALJ's decision did not address her post-hearing brief.

### C. Whether the ALJ's Decision is Constitutionally Defective and Warrants Remand

Plaintiff argues that the Commissioner's decision was constitutionally defective because the Social Security Act provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers clause of the Constitution. DE 24-1 at 12-14. Relying upon *Collins v. Yellen*, 141 S. Ct. 1761 (2021) and *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), Plaintiff contends that the government deprived her of a valid administrative adjudicatory process, and she requests "a *de novo* hearing before a new ALJ who do[es] not suffer from the unconstitutional taint of having previously heard and decided this case without lawful authority to do so." DE 24-1 at 14; DE 27. Plaintiff's reply asserts that the ALJ exercised power she did not lawfully possess due to constitutional defects in the way the Commissioner is appointed. DE 27 at 3-4.

Defendant agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers doctrine "to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." DE 26 at 10 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op.")). However, citing the Supreme Court ruling in *Collins*, 141 S. Ct. 1761, Defendant contends that Plaintiff is not entitled to a remand because she cannot show that the unconstitutional removal restriction caused compensable harm in her case. *Id.* at 11-12. Defendant asserts that Plaintiff cannot show any nexus between the removal restriction and the ALJ's decision to deny her claim or the Appeals Council's denial of review of her specific claim. *Id.* at 13. Defendant asserts further that Plaintiff's rehearing request should be denied under the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential considerations. *Id.* at 15-19.

In *Seila Law*, the Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB") "leadership by a single individual removable only for inefficiency, neglect, or malfeasance violate[d]" the constitutional separation of powers doctrine. *Seila Law*, 140 S. Ct. at 2197. In *Collins*, the Supreme Court similarly held that the "for cause" removal provision applicable to the head of the Federal Housing Finance Agency ("FHFA") violated constitutional separation of powers principles and was thus unconstitutional. *Collins*, 141 S. Ct. at 1787. The *Collins* Court did not resolve whether the party challenging the removal provision was entitled to relief, but observed that:

> Although an unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment), it is still *possible for an unconstitutional provision to inflict compensable harm*. And the possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect cannot be ruled out. Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* at 1788-89 (emphasis added). Notably, the *Collins* Court observed that the unlawfulness of a removal provision "[did] not strip the Director of the power to undertake the other responsibilities of his office." *Collins*, 141 S. Ct. 1761, 1788 n.23 (2021).

In her concurring opinion, Justice Kagan specifically discussed the implications of *Collins* on the Social Security Administration. *Id.* at 1799-02 (Kagan, J., concurring). In relevant part, Justice Kagan observed that:

> [T]he majority's approach should help protect agency decisions that would never have risen to the President's notice. Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block ... but given the

>   majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone ... When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*Id.* at 1802.

The Eleventh Circuit has yet to rule on this precise constitutional challenge, however "[m]ultiple courts reviewing denials of applications for Social Security Benefits in the wake of *Seila Law* and *Collins* have similarly concluded plaintiffs must establish the removal provision of 42 U.S.C. § 902(a)(3) caused some compensable harm to warrant remand." *Dixon v. Kijakazi*, No. 20-82316-Civ-Smith/Matthewman, 2022 WL 2908497, at *12 (S.D. Fla. May 26, 2022), *report and recommendation adopted*, 2022 WL 2904549 (S.D. Fla. July 22, 2022) (quoting *Rickles v. Kijakazi*, 2022 WL 1153803, at *5–6 (M.D. Fla. Apr. 19, 2022) (finding that claimant did not establish that the ALJ's review of her Social Security claim for benefits suffered from any "unconstitutional taint" because she failed to argue that she suffered any form of compensable harm stemming from the removal provision of 42 U.S.C. § 902(a)(3)); *Smith v. Kijakazi*, 2022 WL 1063640, at *9 (N.D. Ala. Apr. 8, 2022) (rejecting the claimant's argument that Commissioner Saul's extended tenure affected her disability determination because it was conclusory.).

In *Herring v. Comm'r of Soc. Sec.*, the court ruled that the removal provision did not necessitate remand or a rehearing of a plaintiff's claim. The rationale in that case was that (1) the removal provision is severable from the remainder of the Social Security Act, and (2) the plaintiff failed to show how the unconstitutional removal provision harmed him. 2022 WL 2128801, at *6 (M.D. Fla. June 14, 2022).

Here, consistent with the above abundance of authority, I find Plaintiff's argument to be without merit. Plaintiff has failed to show a compensable harm against her stemming from the removal provision of 42 U.S.C. § 902(a)(3). The harm identified by Plaintiff is that "[t]he ALJ

who ultimately decided this case did so under invalid regulations promulgated by a Commissioner with no constitutional authority to do so, and as such, a presumptively faulty legal standard was used to adjudicate this claim at the administrative level." DE 24-1 at 13.  This broad argument is plainly insufficient and would render meaningless *Collins*' requirement of direct compensable harm.  Plaintiff "fails to show that absent the alleged unconstitutional provision, [Plaintiff's] claim would have been decided differently at either the ALJ or the Appeals Council level." *Herring*, at *5.  This failure by Plaintiff "to demonstrate that the removal provision had any actual or possible impact on the unfavorable decision [s]he received" renders her request for relief on this ground unavailing.[6]  *Tucker v. Kijakazi*, No. 21-60943-Civ-Dimitrouleas/Snow, 2022 WL 750559, at *13 (S.D. Fla. Feb. 8, 2022), *report and recommendation adopted*, 2022 WL 742744 (S.D. Fla. Mar. 11, 2022).

## CONCLUSION

Upon consideration of the parties' submissions and the administrative record, I find that substantial evidence supports the ALJ's decision that Plaintiff's past relevant work did not constitute a composite job, that the ALJ did not commit reversible error by failing to consider Plaintiff's post-hearing brief and objections and that Plaintiff failed to demonstrate compensable harm from the agency's unconstitutional for cause removal structure to justify remand.  It is therefore

**ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (DE 24) is **DENIED**.

2. Defendant's administrative decision is **AFFIRMED**.

---

[6] Likewise, Plaintiff's argument in her Reply that "the analysis of *Collins* suggests that harm should be presumed" lacks merit. DE 27 at 5, n.14 (citing 141 S. Ct. at 1788).

3. I will separately enter a final judgment in accordance with Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 21st day of November, 2022.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE

.